**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FIAMMA JEAN-BAPTISTE,<br><br>        Plaintiff,<br><br>-against-<br><br>EMPLOY, INC.,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Fiamma Jean-Baptiste, by her attorneys, Mesidor, PLLC, against Employ, Inc., alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1. Employ, Inc. ("Employ," "the Company" or "Defendant") has publicly touted a Company credo of diversity, inclusion, and ethics. Employ proudly advertises that it "prioritize[s] DEI efforts in everything we do," claiming to foster inclusion through dedicated leadership, educational programs, and employee resource groups. Yet behind these polished statements, the Company failed to live up to its own professed values. Rather than creating a workplace where employees could "flourish," Employ silenced and punished Ms. Jean-Baptiste ("Ms. Jean-Baptiste" or "Plaintiff") for demanding that the principles of diversity, equity, and inclusion apply not just in words—but in practice.[1]

---

[1] Employ, Inc., Diversity, Equity, and Inclusion at Employ, (stating "We're proud to prioritize DEI efforts in everything we do at Employ. From our software's accessibility to candidate experience, and our own internal hiring and employee experience – every touchpoint is critical to drive a feeling of inclusion. With dedicated leadership in DEI at Employ, we're committed to creating a space for employees to flourish through programs like ongoing educational sessions, Employee Resource Groups, and resources promoting mental and physical wellbeing."), https://www.employinc.com/company/ (last visited Oct. 20, 2025).

2. Ms. Jean-Baptiste was a dedicated, high-performing leader who embodied the values Employ claimed to champion. Yet, despite her achievements, she soon discovered that the Company's commitment to diversity, equity, and inclusion was more slogan than substance. Specifically, she encountered a corporate culture unwelcoming to Black leadership. After the only two other visible Black leaders at the Company were abruptly terminated, her own efforts to raise concerns about the lack of diversity with Human Resources were dismissed without meaningful response.

3. The situation worsened in September 2024, when Employ hired Joey Humke ("Mr. Humke") as Chief Revenue Officer and Ms. Jean-Baptiste's direct supervisor. Almost immediately, Mr. Humke engaged in a campaign of exclusion and marginalization—systematically undermining Ms. Jean-Baptiste's authority, isolating her from key decisions, and setting in motion a deliberate effort to push her out of the organization.

4. This action seeks to hold Employ accountable for its unlawful discrimination and retaliation against Plaintiff Fiamma Jean-Baptiste, a highly accomplished Black woman, whose exceptional career at the Company was ultimately terminated because of her race and in retaliation for opposing the Company's discriminatory practices.

5. Employ's actions violate federal, state, and local laws prohibiting race discrimination and retaliation. Plaintiff brings this action to remedy violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. L. §§ 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (the "NYCHRL").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, namely Title VII and Section 1981.

7. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PREREQUISITES

9. On May 29, 2025, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"), bearing Charge No. 520-2025-05880, alleging race discrimination and retaliation by Defendant in violation of Title VII.

10. On July 24, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff, thereby terminating its processing of the charge and granting her the right to pursue her claims in federal court.

11. This action is being commenced within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

## PARTIES

12. Plaintiff, Ms. Jean-Baptiste, is an individual and resident of the Eastern District of New York. Ms. Jean-Baptiste was employed by Defendant from November 27, 2023, until her unlawful termination on March 13, 2025.

13. At all relevant times, Ms. Jean-Baptiste was an "employee" within the meaning of Section 1981, Title VII, the NYSHRL, and the NYCHRL.

14. At all relevant times, Ms. Jean-Baptiste worked for Employ remotely from her residence in Brooklyn, New York.

15. Employ is a corporation formed under the laws of the State of Delaware, with a principal place of business located at 1730 Blake Street, Suite #445, Denver, Colorado, 80202.

16. At all relevant times, Defendant employed more than 15 individuals and was an "employer" within the meaning of Section 1981, Title VII, the NYSHRL, and the NYCHRL.

## FACTUAL ALLEGATIONS

### I. Ms. Jean-Baptiste's Exceptional Performance at Employ, Inc.

17. Before joining Employ, Ms. Jean-Baptiste built a highly successful career leading sales enablement, training, and strategy functions within fast-growing technology organizations. Early in her career, she quickly advanced through multiple leadership roles, earning top-performance honors for exceeding sales targets and leading teams recognized among the highest-performing in the country.

18. Over the subsequent years, Ms. Jean-Baptiste developed and implemented national training programs, onboarding systems, and sales methodologies that improved productivity, retention, and overall team performance across global operations. Her leadership was repeatedly rewarded with promotions and consistent recognition for excellence and innovation in enablement strategy.

19. Throughout her career, Ms. Jean-Baptiste has maintained an unblemished professional record. She has never been terminated from any position, has consistently received

outstanding performance evaluations with every supervisor she has reported to. In fact, every supervisor has expressed a desire to rehire her after she voluntarily left past positions. Her record reflects an established reputation for integrity, results, and exceptional leadership.

20. On November 27, 2023, Employ hired Ms. Jean-Baptiste as its Senior Director of Sales Enablement. True to her longstanding record of success, Ms. Jean-Baptiste consistently exceeded expectations and quickly distinguished herself as a strategic and effective leader.

21. Ms. Jean-Baptiste's performance was exemplary throughout her tenure. She implemented impactful initiatives that enhanced the Company's sales operations and strengthened team performance. Her exceptional results were formally recognized on or about April 19, 2024, when her then-supervisor, Greg Petraetis, awarded her a $10,000 spot bonus in acknowledgment of her substantial positive contributions to Employ's growth and success.

22. Ms. Jean-Baptiste's early accomplishments and demonstrated leadership made her a valued member of the management team. Her achievements reflected her dedication, skill, and commitment to advancing Employ's mission—attributes that were widely acknowledged by her colleagues and superiors.

II. **Employ Fostered a Discriminatory Environment and Dismissed Ms. Jean-Baptiste's Concerns About Diversity**

23. Although Ms. Jean-Baptiste excelled in every measure of performance, she was nevertheless forced to navigate a workplace culture that treated Black employees as outsiders. It became clear that her excellence was ignored, contributions were minimized, and advancement came with resistance rather than recognition.

24. On January 23, 2024, for example, a white member of the Customer Experience Senior Leadership Team patronizingly told Ms. Jean-Baptiste that she was "articulate and well-

5

spoken," a common racial microaggression used against Black individuals that implies surprise at their fluency.

25. Ms. Jean-Baptiste also observed a glaring lack of diversity at the Company, particularly in leadership roles. Indeed, while Employ publicly positioned itself as a champion of Diversity, Equity, and Inclusion amid national calls for racial accountability, it appointed Stephanie Manzelli ("Ms. Manzelli"), a white executive, as Senior Vice President of Human Resources and Diversity, Equity & Inclusion, exposing the Company's commitment as more performative than genuine.[2] Not to mention that in the first few months of her employment, the only two other visible Black leaders at Employ were terminated.

26. Alarmed by this trend, in April 2024, Ms. Jean-Baptiste approached Terri Teets ("Ms. Teets"), an HR Business Partner, to inquire about connecting with other Black employees and raise her concerns about the lack of diversity. Ms. Teets suggested connecting Ms. Jean-Baptiste with the Black Employee Resource Group ("ERG"), but this never materialized because the ERG had no Black leader. Ms. Jean-Baptiste's follow-up inquiry in June 2024 was also met with inaction.

27. Ms. Jean-Baptiste also elevated her concerns on inadequate diversity, equity, and inclusion ("DEI") initiatives with Ms. Manzelli, in both an all-hands meeting and a one-on-one meeting. In both instances, Ms. Manzelli flatly dismissed Ms. Jean-Baptiste's concerns, stating that DEI goals did not align with her vision as a People leader.

---

[2] In a telling reversal, once the public attention to diversity, equity, and inclusion began to wane, Employ quickly retitled Ms. Manzelli's position to Chief People Officer, effectively eliminating any executive leadership role dedicated to advancing diversity or equity initiatives within the Company.

### III. Chief Revenue Officer Joey Humke Subjects Ms. Jean-Baptiste to a Hostile Work Environment Based on Her Race

28. In September 2024, Employ hired Mr. Humke as Chief Revenue Officer, and he became Ms. Jean-Baptiste's direct supervisor. Immediately, Ms. Jean-Baptiste's work environment took a drastic turn for the worse as Mr. Humke began a systematic campaign of discriminatory ostracism, exclusion, and hostility designed to undermine her and marginalize her role.

29. To ensure her work aligned with her new supervisor's objectives, Ms. Jean-Baptiste requested that Mr. Humke share his 30-60-90 day plan with her on October 7, 2024. Mr. Humke verbally agreed but never provided the plan. Her follow-up requests on November 5, 2024, and December 9, 2024, were also ignored, leaving her isolated and without the critical information needed to effectively perform her duties.

30. Mr. Humke's pattern of exclusion continued and became increasingly overt. In November 2024, Employ failed to acknowledge Ms. Jean-Baptiste's one-year work anniversary during the Company's All Hands meeting, a recognition routinely and publicly extended to other employees. This omission underscored her erasure within the organization, signaling that her contributions, and by extension, her presence—were neither valued nor welcome.

31. On December 10, 2024, Ms. Jean-Baptiste learned, by pure happenstance, from a coworker that she had been excluded from a critical Revenue Strategy Session meeting scheduled to take place in Denver. As a senior leader on the Revenue team, and with her team responsible for a significant portion of the work, her exclusion was shocking and unexplainable. She was forced to proactively advocate for her own inclusion in a key planning meeting.

32. Mr. Humke also subjected Ms. Jean-Baptiste to public humiliation and microaggressions. On January 13, 2025, more than three months after becoming her supervisor, Mr. Humke publicly mispronounced Ms. Jean-Baptiste's first name during a team meeting. Despite multiple prior corrections, Mr. Humke continued to mispronounce Ms. Jean-Baptiste's name. His conduct was not inadvertent but a deliberate display of disrespect that diminished Ms. Jean-Baptiste's dignity and authority in front of her peers.

33. Shortly thereafter on January 14, 2025, at the company's Revenue Kickoff event, Mr. Humke openly belittled Ms. Jean-Baptiste. When she raised the issue of psychological safety, a well-documented DEI concern, Mr. Humke dismissed the importance of anonymous feedback as "snarky." Likewise, when Ms. Jean-Baptiste, one of the few Black leaders at Employ, asked about the Company's strategy to address the lack of diversity on the Revenue Team, Mr. Humke dismissively stated that Employ would simply "continue to hire the best person for the job."

34. At that same meeting, Mr. Humke continued his public campaign of excluding Ms. Jean-Baptiste. During a Leadership Q&A, he invited every other direct report to share what they looked forward to in 2025 and pointedly skipped over Ms. Jean-Baptiste without acknowledgment. This deliberate omission, visible to the entire leadership team, was not an oversight but a blatant signal that she did not belong nor was welcomed.

35. The hostility reached a breaking point on January 15, 2025. The prior evening, Mr. Humke had messaged Ms. Jean-Baptiste outside of work hours about last-minute schedule changes. When she reasonably responded the next morning to flag potential logistical concerns, Mr. Humke publicly scolded her on Employ's Microsoft Teams messaging system, baselessly blaming her for his own lack of preparation. His outburst was so aggressive and

disproportionate that a coworker who witnessed the exchange later reached out to Ms. Jean-Baptiste privately to express concern and offer support.

### IV. Employ Retaliates Against Ms. Jean-Baptiste After She Reports Mr. Humke's Discriminatory Conduct

36. Unable to endure the discriminatory and hostile environment any longer, on January 15, 2025, Ms. Jean-Baptiste met with Ms. Teets to lodge a formal complaint regarding Mr. Humke's discriminatory behavior. She detailed his repeated microaggressions, his pattern of exclusion, and the significant negative impact his conduct was having on her emotional and mental health.

37. Ms. Teets assured Ms. Jean-Baptiste that her complaint would remain confidential. This was a lie.

38. Less than a week later, on January 21, 2025, Mr. Humke confronted Ms. Jean-Baptiste, repeating the specific concerns she had shared in confidence with Ms. Teets nearly word-for-word. This was a clear and chilling act of intimidation intended to punish Ms. Jean-Baptiste for engaging in protected activity.

39. After learning the details of her protected complaint, Mr. Humke, with the full knowledge and acquiescence of Employ's leadership, escalated his retaliatory campaign against Ms. Jean-Baptiste.

40. On January 29, 2025, Ms. Jean-Baptiste learned from a coworker that Mr. Humke had explicitly directed the coworker to bypass her in partner training sessions, further reducing her visibility and undermining her role. Not only was this a personal attack on Ms. Jean-Baptiste, but it also signaled a deliberate exclusion given Employ's already stark absence of Black leadership. By preventing Black talent to even participate in partner training sessions Employ, once again, was effectively erasing one of the few remaining Black

9

women in a senior role and further reinforcing the Company's pattern of marginalizing those who sought to advance equity.

41. Roughly one week later, on February 5, 2025, Mr. Humke again purposefully mispronounced Ms. Jean-Baptiste's name during a high-level meeting with multiple senior leaders. He then called on her to lead the meeting, a task he was supposed to perform, in a deliberate attempt to make her appear unprepared. Mr. Humke's behavior did not go unnoticed. As with his prior attacks, a coworker once again contacted Ms. Jean-Baptiste to express discontent and inform her that there was a growing concern for her in the employee pool.

42. Shortly thereafter, on February 19, 2025, Ms. Jean-Baptiste followed up with Ms. Manzelli regarding a concern she had previously raised with Ms. Teets earlier that month. Specifically, Ms. Jean-Baptiste inquired whether the Company intended to acknowledge or celebrate Black History Month, as it had publicly done for the Lunar New Year. Although Ms. Teets had previously assured Ms. Jean-Baptiste that "a few things were in the works," Ms. Manzelli informed Ms. Jean-Baptiste that no such initiatives would occur because the Company had not received responses to its outreach efforts. Ms. Jean-Baptiste expressed that the Company's failure to recognize Black History Month was deeply concerning and inconsistent with its stated diversity and inclusion values, emphasizing that leadership should take initiative in modeling meaningful recognition of cultural diversity.

43. On February 27, 2025, during the Enablement Unification Kickoff meeting, Ms. Manzelli stated that the Sales Team had an "execution problem." Ms. Jean-Baptiste agreed with this assessment and added that the issue stemmed from the team's lack of a clearly defined strategy for execution. Immediately thereafter, Ms. Manzelli pointedly excluded Ms. Jean-

Baptiste from a discussion about next steps, instructing her collaborator to meet with her separately. Once again, Ms. Jean- Baptiste was isolated from her team and marginalized, despite the fact that Ms. Jean-Baptiste and her collaborator were expected to work together on these very matters.

## V. Defendant Unlawfully Terminates Ms. Jean-Baptiste's Employment Under the Pretext of a "Position Elimination"

44. Only two weeks later, on March 13, 2025, Mr. Humke and Ms. Teets informed Ms. Jean-Baptiste that Employ was eliminating her position, effectively terminating her employment.

45. This decision came as a surprise given that just weeks earlier, Employ had tasked Ms. Jean-Baptiste with designing a crucial new structure within the company and, underscoring Employ's unlawful motivations, Ms. Jean-Baptiste was the sole employee on her team whose position was eliminated.

46. Indeed, Employ's post-termination actions further reinforced its discriminatory and retaliatory motivations, as Employ offered Ms. Jean-Baptiste a severance that was a mere fraction of what it offered to a less-tenured non-Black employee and, after Ms. Jean-Baptiste reiterated her complaints of discrimination and raised the specter of retaliation, Employ advanced the palpably untrue position that Ms. Jean-Baptiste resigned her employment.

## VI. Ms. Jean-Baptiste Suffers Signifiant Damages

47. As a direct and proximate result of Defendant's unlawful discrimination and retaliation, Ms. Jean-Baptiste has suffered, and continues to suffer, significant damages. The Company's actions deprived her not only of her livelihood, but also of the professional stability, dignity, and advancement opportunities she had rightfully earned.

48. Ms. Jean-Baptiste has sustained substantial economic losses, including the loss of her annual salary, annual target bonus, stock options, and other valuable employment benefits.

49. Furthermore, Defendant's egregious conduct has inflicted profound emotional distress, mental anguish, and humiliation upon Ms. Jean-Baptiste. The relentless pattern of discrimination, hostility, and retaliatory termination has exacted a serious toll on her well-being further eroding her confidence, disrupting her sense of safety in the workplace, and causing lasting psychological harm. As a result, Ms. Jean-Baptiste has been compelled to seek professional therapy and treatment to address the emotional and mental health consequences of Defendant's unlawful actions.

### FIRST CAUSE OF ACTION
### (Race Discrimination in Violation of 42 U.S.C. § 1981)

50. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51. By the conduct described above, Defendant discriminated against Plaintiff because of her race in violation of Section 1981 by, inter alia, subjecting her to disparate treatment, creating and maintaining a racially hostile work environment, and the unlawful termination of her employment.

52. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

53. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. § 1981)

54. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. By the acts described above, Defendant retaliated against Plaintiff for engaging in protected activity, namely opposing conduct she reasonably believed to be unlawful race discrimination, in violation of Section 1981. Defendant's retaliatory acts included, but were not limited to, intimidating her, undermining her authority, involuntarily transferring her, and ultimately terminating her employment.

56. As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered, and continues to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

57. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964)

58. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59. By the acts described above, Defendant discriminated against Plaintiff based on her race in violation of Title VII, by subjecting her to disparate treatment, a hostile work environment, and unlawful termination of her employment.

60. As a direct and proximate result of Defendant's unlawful discriminatory conduct in

violation of Title VII, Plaintiff has suffered, and continues to suffer, considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

61. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964)

62. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63. By the acts described above, Defendant retaliated against Plaintiff in violation of Title VII because she engaged in protected activity by opposing practices made unlawful by Title VII.

64. As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered, and continues to suffer, considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

65. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Race Discrimination in Violation of the NYSHRL)

66. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67. By the acts described above, Defendant discriminated against Plaintiff on the basis of her race in violation of the NYSHRL, by subjecting her to disparate treatment, a hostile work environment, and unlawful termination.

68. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered, and continues to suffer, considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

69. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

70. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71. By the acts described above, Defendant retaliated against Plaintiff in violation of the NYSHRL, because she engaged in protected activity by opposing practices forbidden under the NYSHRL.

72. As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered, and continues to suffer, considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress,

humiliation, and other compensable damages unless and until this Court grants relief.

73. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Race Discrimination in Violation of the NYCHRL)

74. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75. By the acts described above, Defendant discriminated against Plaintiff in violation of the NYCHRL by treating her less well than other employees because of her race.

76. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered, and continues to suffer, considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

77. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

78. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79. By the acts described above, Defendant retaliated against Plaintiff in violation of the NYCHRL by engaging in conduct that was reasonably likely to deter a person from opposing discriminatory practices.

80. As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered, and continues to suffer, considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

81. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## DEMAND FOR JURY TRIAL

82. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Fiamma Jean-Baptiste hereby demands a trial by jury on all claims and issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fiamma Jean-Baptiste respectfully requests that this Court enter a judgment in her favor and against Defendant Employ, Inc., and grant the following relief:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Section 1981, Title VII, the NYSHRL and the NYCHRL in that Defendants discriminated against Plaintiff on the basis of her race and retaliated against Plaintiff on account of her complaints of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

17

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: October 22, 2025
       Bellport, New York

                                    **MESIDOR PLLC**

                                    Marjorie Mesidor
                                    Joseph A. Myers
                                    30 Station Road, Suite 5
                                    Bellport, New York 11713
                                    Telephone: (212) 930-6010
                                    mm@marjoriemesidor.com
                                    jm@marjoriemesidor.com
                                    *Attorneys for Plaintiff*